UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| STEPHANIE THOMAS, | ) | |
| | ) | |
| Petition, | ) | Civil No. 5:23-cv-00051-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DAVID PAUL, Warden, | ) | **&** |
| | ) | **ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Stephanie Thomas is currently serving a 78-month prison term for trafficking in methamphetamine. *United States v. Thomas*, No. 5: 18-CR-72-TES-CHW-2 (M.D. Ga. 2018). Thomas challenges the Bureau of Prisons ("BOP") calculation of her good time credits under the First Step Act ("FSA"). But Thomas abandoned her inmate grievance on the matter, leaving her claims unexhausted. The Court will therefore dismiss her § 2241 petition without prejudice on initial screening.

In 2018, Congress enacted the First Step Act "to reform sentencing law and to reduce recidivism." *United States v. Saldana*, 807 F. App'x 816, 818 (10th Cir. 2020). The FSA permits certain prisoners who complete approved "evidence-based recidivism reduction [EBBR] programming" or "productive activities" to earn credits that will be applied to reduce the time spent in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A), (C). For every 30 days spent in EBBR programming or productive activities, FSA credit accrues at a rate of 10 days, with an extra 5 days if the inmate is considered a "minimum" or "low" risk for recidivism and has not increased their recidivism risk for two consecutive assessments. 18 U.S.C.

§ 3632(d)(4)(A)(i), (ii). Credits begin to accrue once the inmate's federal sentence commences, but can be lost for prison disciplinary infractions. 18 U.S.C. § 3632(e).

The BOP published an interim procedure to calculate FSA credits in January 2022. At that point, once an inmate was within 24 months of their projected release date, the BOP would manually calculate the inmate's FSA credits, but would apply the 15 day accrual rate regardless of whether the inmate was actually entitled to it. By September 2022, the BOP had automated the calculation process so that an inmate's FSA credits were accurately calculated each month, and applied them until the inmate reached the statutory maximum of 365 credits or were within 18 months of their release date. *See Poff v. Carr*, No. 4:21-CV-1288-P, 2022 WL 2133871, at *5 (N.D. Tex. June 14, 2022).

In October 2022, the BOP calculated that Thomas was entitled to 360 days FSA credit, with 221 days applied towards early release and 139 days applied toward early placement in confinement at home or a halfway house. [R. 1-4 at 1-2.] A later assessment on January 19, 2023, concluded that Thomas was entitled to 450 days FSA credit, with 365 days applied towards early release and 85 days applied toward early placement in confinement at home or a halfway house. *Id.* at 3-4. Under the new calculation, Thomas has received the maximum amount of FSA credits toward release that she may receive under the FSA. However, in her petition Thomas contends that she should have been earning credits at the higher 15-day rate for most of her sentence and is, therefore, entitled to an earlier transfer to a halfway house. [R. 1 at 2, 6.]

The Court does not reach Thomas' claims at this juncture because she did not properly and fully exhaust her administrative remedies before filing suit. Before a prisoner may seek habeas relief under Section 2241, she must exhaust administrative remedies within the BOP.

2

*Leslie v. United States*, 89 F. App'x 960, 961 (6th Cir. 2004) ("[I]t is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under § 2241."). The prisoner must exhaust those remedies "properly," meaning in full compliance with the agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Thus, where a prisoner has further avenues to pursue relief administratively, she must exhaust them before seeking judicial relief. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("An inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so.").

Here, Thomas filed her grievance regarding the FSA calculation on January 12, 2023, [*see* R. 1 at 2], one week *before* the FSA calculation about which she complains. [*See* R. 1-4 at 3-4.] And when Thomas did not receive a response to the grievance she filed with the warden, she believed that "I cannot file to Regional (BP-10) until I have a decision from [BP-9]." [R. 1 at 3.] But that isn't correct. The warden was required to respond to her grievance within forty days after she filed it when the permitted twenty-day extension is included. 28 C.F.R. § 542.18. Thomas filed her petition before even this initial deadline had expired. And, in any event, "if the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *See Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *1 (6th Cir. July 17, 2017). Thomas therefore may still appeal to the Mid-Atlantic Regional Office and then to the Central Office. Her petition is therefore prematurely filed.

Nor is exhaustion "futile" merely because the prisoner contends that, assuming his contentions are correct, he ought to be released before the exhaustion process can run its course.

3

*Accord Preiser v. Rodriguez*, 411 U.S. 475, 494-95 (1973) (rejecting argument that § 2254's exhaustion requirement should be excused because passage of time while process is completed might render his claims irremediable); *see also Walsh v. Boncher*, No. 22-CV-11197-DLC, 2023 WL 363591, at *6 (D. Mass. Jan. 23, 2023); *Foss v. Quintana*, No. CIV. 5:14-258-DCR, 2014 WL 5157305, at *3 (E.D. Ky. Oct. 14, 2014) (collecting cases), *aff'd*, No. 14-6360 (6th Cir. May 5, 2015).

Instead, utilization of administrative remedies is considered futile only if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Sers.*, 824 F.2d 1132, 1139 (D.C. Cir. 1987). Thomas makes no such suggestion here. And requiring exhaustion will serve the core purposes of the exhaustion requirement: "to allow an administrative agency to perform functions within its special competence - to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972); *Detroit Newspaper Agency v. N.L.R.B.*, 286 F.3d 391, 396 (6th Cir. 2002).

Because the limited record before the Court does not reveal the basis for the BOP's calculations, the wiser course is to require exhaustion, thus permitting full development of the administrative record upon which to reach a decision.

Accordingly, it is **ORDERED** as follows:

1. Stephanie Thomas' petition for a writ of habeas corpus **[R. 1]** is **DENIED** without prejudice;

2. The Court will enter a corresponding judgment;

3. This matter is **STRICKEN** from the docket.

This the 21st day of February 2023.

Gregory F. Van Tatenhove
United States District Judge